# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2008 APR 17 PM 3: 10

CLERK _L. Flanders_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| JACKIE BEASLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) CV 106-067 |
| | ) |
| | ) |
| MATT PHARES and JEFF JOHNSON, | ) |
| | ) |
| Defendants. | ) |

---

## ORDER

---

Plaintiff Jackie Beasley ("Beasley") commenced the above-captioned case pursuant

to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Beasley

alleged in his complaint that law enforcement officers improperly strip-searched him, used

excessive force to arrest him, and conducted an illegal search of his motel room. Defendants

denied Beasley's allegations. The Court held a bench trial on the matter and now makes its

written findings of fact and conclusions of law.[1]

---

[1] The parties consented to have the undersigned conduct any and all proceedings in
this case, including entry of final judgment, in accordance with 28 U.S.C. § 636(c) and Fed.
R. Civ. P. 73. (Doc. no. 29).

# I.    THE EVIDENCE

## A.    Plaintiff's Version of Events[2]

Beasley testified in support of his claim of an illegal daylight strip search that in October, 2004, he was confronted by Officer Jeff Johnson, one of two Defendants in this case, and Officer William Jarrett of the Richmond County Sheriff's Office ("RCSO"). Beasley stated that the officers used three drug dogs to search his automobile and found no drugs. Beasley stated that Defendant Johnson then told Beasley that he knew Beasley was concealing drugs in Beasley's underwear and told him to "drop [his] underwear." Beasley indicated that after removing his trousers and underwear, he was made to bend over and "cough" for the officers. He stated that no drugs were found and that the officers released him.

Beasley stated that his next encounter with the RCSO Narcotics Unit was on October 27, 2004, at the Knights Inn Motel. He stated that he had taken a shower and gone out to get a pair of socks from his vehicle. He related that without any warning, Defendant

---

[2]Beasley did not present any witnesses at trial, relying instead on his own testimony to support his claims. Beasley had initially made a request for blank subpoenas. (Doc. no. 34). In an Order dated October 11, 2007, the Court explained that if Beasley wanted to have inmate witnesses subpoenaed, he must comply with certain procedures set forth in that Order, and if he wanted non-inmate witnesses to appear, they may be entitled to a witness fee paid by the party seeking the appearance of that witness. (Doc. no. 36). Beasley then requested the production at trial of three, specifically named non-inmate witnesses, but he did not provide any funding to support his request. (Doc. no. 38). The Court denied this second request, (doc. no. 39), and when Beasley raised the witness issue at trial, he was again reminded that the Court is not required to fund his litigation efforts, which includes issuing subpoenas for indigent parties in civil proceedings. Lloyd v. McKendree, 749 F.2d 705, 706-07 (11th Cir. 1985) (per curiam).

Johnson tackled him from behind and struck Beasley in the face. According to Beasley, Defendant Johnson stated that he had wanted to hit him ever "since the gas station incident."

Beasley stated that he was taken into his motel room by Defendant Johnson and Officer Matt Phares, the second Defendant in this case, who began questioning Beasley and going through his telephone book. He stated that Defendant Phares searched his motel room, finding only some "baking soda." Beasley stated that Defendant Phares made the statement that the "baking soda" would be "ice" by the time they arrived at "Richmond County," referring to the jail.

On cross-examination, however, Beasley related that he had numerous encounters with RCSO officers, including Defendants, during 2004 and was charged with possession of methamphetamine on at least four occasions, during separate incidents. In fact, it appears that there were no less than five RCSO encounters with Beasley between May, 2004 and October 27, 2004.

Beasley testified that on May 19, 2004, he was stopped by the RCSO Narcotics Unit on Wildwood Drive in Augusta. Beasley was charged with possession of methamphetamine, signed a statement admitting possession of the drugs, and subsequently entered a guilty plea to the charges. At the time of the instant trial, Beasley was serving the sentence imposed for that offense. When asked on cross-examination about the signed statement, Beasley said that he signed the statement so that his uncle would be released. He finally admitted upon further cross-examination that "some" of the methamphetamine belonged to him.

On cross-examination, Beasley also testified about another encounter with the RCSO Narcotics Unit on August 20, 2004, at the Bradford Point Apartments. During this incident,

3

Beasley again admitted possessing both methamphetamine and marijuana, and during his testimony at the instant trial, Beasley proclaimed it a "legal arrest." Beasley explained, "I'll have to say on that one there, I feel like that one's legal, because it was in my possession, nine-tenths of the law, it's got to be in my pocket and that's the only arrest I had drugs in my pocket."

Beasley's next encounter with the RCSO Narcotics Unit occurred on September 2, 2004 at 2203 Silverdale Road in Augusta. On this occasion, Defendants Johnson and Phares charged Beasley with possession of methamphetamine. On cross-examination, Beasley admitted that Defendants seized a writing pen hanging from a chain around Beasley's neck and further admitted that the pen contained methamphetamine. Under oath, Beasley stated that had borrowed the pen from someone and did not know that it contained methamphetamine.

Beasley was also questioned about the so-called public strip search at the Union 76 gas station on Reynolds Street. Beasley remembered that Defendant Phares was not present during this encounter. He remembered that Defendant Johnson, Officer Jarrett, and Officer Bridges participated in the allegedly illegal search on that occasion. Beasley has yet to explain only naming Officer Johnson as a Defendant in this case regarding the incident.

Beasley was also cross-examined extensively concerning the Knights Inn encounter with Defendants on October 27, 2004. In his complaint, Beasley alleged that Defendants Johnson and Phares did not announce themselves as police officers nor "obtain [his] attention before jumping [him]." Beasley claimed he was "beaten severely" and that after the beating they threatened to "plant ice (meth) on me." In his complaint, Beasley alleged the officers

4

arrested him without probable cause and searched his motel room and his fiancée's van without her consent or explanation.[3] At trial, Beasley denied possessing methamphetamine on October 27, 2004. He also denied informing officers that he had a weapon in the van and denied that the officers located a weapon in the van where he had indicated. On cross-examination, however, Beasley admitted there was a firearm seized from the van but argued that it was not in his "possession."

When questioned about a quantity of methamphetamine located in his vehicle in a magnetic key holder, Beasley denied that any drugs were found in his vehicle. When asked whether he had previously been found in possession of methamphetamine contained in a magnetic key holder, Beasley responded, "I'll have to plead the Fifth on that."

## B. Defendants' Version of Events

The defense version of the encounters with Beasley was predictably different. Former narcotics investigator William Jarrett, a twelve-year law enforcement veteran, testified that he was familiar with Beasley through his employment with the RCSO.[4] Officer Jarrett stated that he was with Defendant Johnson during October of 2004 when they approached Beasley at the Union 76 gas station on Reynolds Street. Officer Jarrett stated

---

[3] As the Court explained when screening Beasley's complaint, Beasley may not vicariously assert his fiancée's Fourth Amendment rights. (Doc. no. 15, p. 2 n.2 (citing Lenz v. Winburn, 51 F.3d 1540, 1549 (11th Cir. 1995), *adopted by*, doc. no. 19). Thus, the Court did not sanction a claim in this case concerning the alleged improper search of the fiancée's van.

[4] Although William Jarrett is no longer employed as a narcotics investigator, for ease of reference of the roles of the various individuals involved in the events forming the basis of the case, the Court will refer to Mr. Jarrett as "Officer Jarrett."

that Defendant Johnson had received information from an informant that Beasley would be in possession of drugs.

Officer Jarrett stated that they approached Beasley, and Defendant Johnson explained that they had received information that Beasley was in possession of drugs. Officer Jarrett stated that Beasley denied having drugs and consented to a search, which confirmed the absence of any narcotics. Officer Jarrett stated that no strip search was conducted and that he had never been involved in a public strip search. He stated that he had had several encounters with Beasley during narcotics investigations and that Beasley had always been cooperative. He said Beasley would generally respond that he did not have anything and that the officers were welcome to search if they wanted to.

Officer Jarrett stated that he was also involved in the Knights Inn arrest of Beasley on October 27, 2004. He stated that he and Defendant Johnson had developed informant information that Beasley was at the Knights Inn operating a particular vehicle and in possession of methamphetamine. Officer Jarrett stated that four narcotics investigators, he and Defendant Johnson in one vehicle, Defendant Phares and Investigator Hester in another vehicle, drove to the Knights Inn to follow up on the information. Officer Jarrett stated that when they arrived, they saw Beasley standing next to the vehicle described by their informant. According to Officer Jarrett, when Beasley saw the investigators, he fled on foot. Defendant Johnson gave chase and "tackled" Beasley. Officer Jarrett could not recall who handcuffed Beasley, but he was clear that at no time did he or Defendant Johnson strike Beasley in any way. Officer Jarrett said they explained their information and reason for being there.

6

According to Officer Jarrett, Beasley responded that he had no methamphetamine on him but did have a pistol in his jacket in the truck which had been identified by the informant. Officer Jarrett testified that as usual, Beasley consented to a search of the truck; Officer Jarrett found and seized a firearm in the location Beasley had indicated. Officer Jarrett stated there was a female with Beasley at the motel who informed them Beasley had methamphetamine in a magnetic key holder inside the dash of the truck. Officer Jarrett said that after a lengthy search, he found and seized the key holder containing methamphetamine.

Regarding their presence in the motel room, Officer Jarrett stated only that Beasley was questioned there and that a "bunch of pills" were seen in plain view, seized, and logged into evidence. Officer Jarrett said no charges regarding the pills were ever brought against Beasley.

The testimony of Defendant Johnson was substantially similar to that of Officer Jarrett.[5] Defendant Johnson initially became familiar with Beasley through information provided by informants as well as information that he heard at his office in the RCSO. Defendant Johnson was present on September 2, 2004, when Beasley was arrested at the residence located at 2203 Silverdale Road. Defendant Johnson had received information that a female at the residence was in possession of methamphetamine and had been providing it to teenagers. When Defendant Johnson went to the residence to speak to the female, he asked for and received written permission to search the residence. He also discovered that

_____

[5]At the time of the events in question, Defendant Johnson was a narcotics officer with the RCSO. Defendant Johnson worked with the RCSO approximately ten years before leaving for his current job with the Public Defender's Office in Augusta.

Beasley was present in the home, and Beasley was arrested because methamphetamine was recovered from a writing pen hanging from Beasley's neck.

Defendant Johnson was also present with Officer Jarrett during the so-called strip search at the Union 76 gas station on Reynolds Street. Informant information had revealed that Beasley was expected to participate in a drug transaction in North Augusta, South Carolina, and that Beasley would be in a certain vehicle. Defendant Johnson headed toward the vicinity of the Georgia-South Carolina state line and located the vehicle that had been described in parking lot of the Union 76 gas station on Reynolds Street. As he was familiar with Beasley from the prior encounter at Silverdale Road, Defendant Johnson recognized and approached Beasley in the Union 76 parking lot. He explained to Beasley why he was there and asked for permission to search Beasley's car, which was granted, "as always." Beasley was patted down to check for weapons. No drugs were found in the car, and Beasley was sent on his way. Defendant Johnson testified without equivocation that no strip search was performed, nor had he ever participated in a strip search of any subject in public view.

As to the events at the Knights Inn, Defendant Johnson testified that he and Officer Jarrett were in one car, with Defendant Phares and Officer Hester in a second car, when the informant information came in that Beasley would be at the Knights Inn in a particular vehicle and would be in possession of drugs. When Defendant Johnson and Officer Jarrett arrived, Defendant Johnson saw Beasley standing in the parking lot, exited the car, and "took off after Beasley" when Beasley - who had seen Defendant Johnson - started to run. Defendant Johnson grabbed Beasley, took him to the ground, and asked Officer Jarrett to get the handcuffs. Defendant Johnson testified that he identified himself as a law enforcement

8

officer before Beasley started to run, that he wore his badge around his neck, and that he felt sure Beasley had recognized him, presumably from the several previous encounters they had had. Defendant Johnson testified that he did not strike Beasley and in fact, because of Beasley's strength, it "was about all he could do" to hold Beasley on the ground until Officer Jarrett came back with the handcuffs. Defendant Johnson stated without hesitation that once Beasley was handcuffed, Beasley did not offer any further resistance and no further force was used on him.

Defendant Johnson testified that Beasley mentioned his neck injury and that he wanted to put his brace on, which was located in the motel room.[6] At that point, officers accompanied Beasley into the motel room. Defendant Johnson testified that in addition to going to the room for the neck brace, officers routinely move individuals out of the public view to see if they wanted to provide any cooperating information.

Defendant Johnson testified that once the officers were inside the room, there was no search. Rather, a female located in another room at the Knights Inn provided information about hidden drugs in a truck in the parking lot. Defendant Johnson relayed that information to Officer Jarrett, who then searched the identified truck and discovered drugs. Defendant Johnson did not observe anyone search the motel room into which Beasley had been taken to retrieve his neck brace.

---

[6]On cross-examination, Beasley again questioned Defendant Johnson about the request for his neck brace, suggesting that Defendant Johnson had been reluctant to allow Beasley to have the brace upon his request. Defendant Johnson testified that he did not refuse Beasley the brace, but instead said that because he was not a doctor, he did not want to attempt to put the brace on Beasley and risk injury to Beasley. This exchange further supports the conclusion that the officers went into the motel room at Beasley's request to retrieve his brace.

The defense also presented testimony from Patrick Young, a twelve-year veteran of the Internal Affairs Division of the RCSO ("Inv. Young"). Inv. Young received an Open Records request on behalf of Beasley for the case files related to his four arrests, cases that were closed at the time of the request. The files were provided to a member of Beasley's family. Notably, however, Inv. Young testified that Internal Affairs never received any complaint on Beasley's behalf concerning the use of excessive force, illegal arrests, or illegal searches. Inv. Young also identified booking photos of Beasley after his arrest on September 2, 2004 (Silverdale Road encounter) and on October 27, 2004 (Knights Inn encounter). The photos do not show any signs of the use of excessive force suggested by Beasley. Defs.' Ex. 7.

Caroline Lee, a Registered Nurse who works for Correctional Medical Services, the contract medical provider at the Richmond County Jail ("RCJ"), also testified on behalf of the defense.[7] Ms. Lee serves as the Health Services Administrator at the RCJ, and as part of that job, she is the custodian of the medical records of the inmates who come through the RCJ. Ms. Lee explained that when an inmate arrives at the booking area of the RCJ, an intake form is completed, and if any medical issues are identified during this intake screening, medical personnel are called to the booking area to evaluate whether the inmate needs to go to the hospital for treatment.

In reviewing the intake sheet for Beasley on October 27, 2004, the date of Knights Inn encounter during which Beasley claims he was "attacked," Ms. Lee explained that Beasley denied having any medical problems requiring immediate attention, that Beasley had

---

[7]Beasley was taken to the RCJ after his arrests at issue in this case.

no "obvious" injuries or symptoms suggesting the need for medical treatment, and that Beasley did not have an arrest injury. See Defs.' Ex. 9. Ms. Lee also testified that Beasley's medical records from the relevant time period at the RCJ show that his medical complaints centered on neck and back pain from a motor vehicle accident. See Defs.' Ex. 10. Beasley did not make any complaint of an injury arising from his arrest or an allegation of use of excessive force by a law enforcement officer.

## III. FINDINGS OF FACT

In making its findings of fact, the Court starts by noting:

> Findings based on the credibility of witnesses demand even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said. And when there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

Burrell v. Bd. of Trustees of Ga. Military Coll., 125 F.3d 1390, 1394 (11th Cir. 1997) (internal quotation marks and citations omitted); see also Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985) (stating that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. . . . This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.").

In this instance, Beasley had no evidence, testimonial (other than his own) or otherwise, to support his version of any of the events alleged in his complaint. Moreover, his own testimony was riddled with inconsistencies and blatantly false statements. For example, Beasley lied about his possession of methamphetamine on May 19, 2004, charges

11

to which he pleaded guilty and for which he is currently incarcerated, and only when pressed on cross-examination did he finally admit that "some" of the narcotics were his. Beasley also offered a thoroughly unbelievable explanation that he knew nothing about the methamphetamine in a pen he had borrowed that law enforcement officers found hanging around his neck on September 2, 2004.

As to the supposed strip search at the Union 76 gas station on Reynolds Street, Beasley offered only his own self-serving testimony concerning what allegedly happened, but Defendant Johnson and Officer Jarrett provided corroborating testimony that no strip search occurred at that gas station and that no such strip searches were ever conducted in public. Moreover, the testimony at trial and the allegations in Beasley's handwritten complaint differed substantially. For example, in the complaint, Beasley stated that he was "beaten severely," but a booking photo shows only one reddened area on Beasley's forehead consistent with being "tackled" during his arrest. Also inconsistent with Beasley's claim of a "severe beating" was his failure to report any such beating during his intake screening at the RCJ or to make a report to Internal Affairs about the alleged beating. Nor has Beasley ever explained why he chose to name only Defendants Phares and Johnson as parties to this lawsuit when multiple law enforcement officers were present during the events about which he complains.

In short, Beasley's interests were obvious, his demeanor was suspect, and his testimony was riddled with inconsistencies and blatantly false statements. Thus, to say the least, the Court gives his testimony very little weight. Conversely, the testimony from the defense witnesses does not appear inconsistent, except possibly for a few minor details, and

12

will be assumed accurate for the purposes of the Court's factual findings. In particular, the

Court makes the following factual findings: (1) there was no strip search conducted at the

Union 76 gas station on Reynolds Street; (2) upon finding Beasley at the Knights Inn on

October 27, 2004, Defendant Johnson identified himself as a police officer, and Beasley then

attempted to flee; (3) Defendant Johnson did not strike Beasley in face during or after the

"tackle" used to stop Beasley from fleeing; (4) upon his arrest, Beasley asked to retrieve his

neck brace and voluntarily allowed officers into his motel room in order to get the brace; and

(5) there was no search of Beasley's motel room conducted.

## III.    CONCLUSIONS OF LAW

### A.    Strip Search

Beasley alleges that, while he was at the Union 76 gas station on Reynold Street in

October 2004, Defendant Johnson subjected him to an improper strip search. Defendants

deny that Beasley was subjected to a strip-search, and in any event, Defendant Phares was

not present during the incident. As noted above, the Court has made the finding of fact that

no strip search of Beasley occurred at the Union 76 gas station, and as such, there can be no

violation of Beasley's Fourth Amendment rights as to this issue.[8]  At trial, Beasley merely

offered his unsubstantiated and unclear testimony about what supposedly happened during

---

[8]The manner in which a strip search is conducted is evaluated under a reasonableness standard pursuant to the Fourth Amendment and "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it is conducted." Bell v. Wolfish, 441 U.S. 520, 559 (1979); see also Cuesta v. Sch. Bd. of Miami-Dade County, Fla., 285 F.3d 962, 969 n.6 (11th Cir. 2002) ("[A] strip search performed without reasonable suspicion violates the Fourth Amendment rights of the individual searched." (citation omitted)).

the encounter at the gas station. Conversely, Defendant Johnson unequivocally denied subjecting Beasley to a strip-search, asserted that Defendant Phares was not present during the incident, and explained that strip-searches were never conducted by RCSO officers in public view. Defendant Johnson's version of events was supported by the testimony of Officer Jarrett, who testified that he was present during the incident at the Union 76 gas station, that Beasley was not subjected to a strip-search, and that strip-searches were never conducted in public view. Furthermore, Inv. Young testified that he investigates complaints concerning RCSO officers and that no complaint has ever been made on Beasley's behalf concerning the incident at the Union 76 gas station.

Based on these accounts and the evidence presented, the Court finds that Beasley was not subjected to a strip search, let alone a strip search conducted by either named Defendant, at the Union 76 gas station on Reynolds Street in October 2004. Therefore, the Court finds for Defendants on Beasley's Fourth Amendment claim related to the alleged strip search at the Union 76 gas station on Reynolds Street.

**B.     Excessive Force**

Beasley also contends that Defendants used excessive force to effectuate his arrest at the Knights Inn on October 27, 2004. According to Beasley, he was "jumped" from behind without any notification from Defendants that they were law enforcement officers, and once he was handcuffed, he claims that he was beaten. Defendants deny Beasley's allegations and contend that only reasonable and necessary force was used to stop Beasley from fleeing, and once he was handcuffed, no further force was used. Defendant Johnson also specifically denies Beasley's allegation that he struck Beasley in the face.

14

Before addressing Beasley's specific claims regarding the alleged use of excessive force, the Court turns its attention to the events immediately preceding Beasley's arrest. In particular, the Court must examine whether there was probable cause to arrest Beasley in the first place. The testimony at trial revealed that Defendant Johnson and Officer Jarrett had informant information that Beasley would be at the Knights Inn, with a particular vehicle, and would be in possession of methamphetamine. Beasley had a history of drug arrests by the RCSO Narcotics Unit, and in particular, Defendant Johnson had been present on September 2, 2004, when Beasley was arrested at the residence located at 2203 Silverdale Road because he had been discovered to have methamphetamine secreted in a pen hanging around his neck. When officers arrived at the Knights Inn on October 27, 2004, they saw Beasley, as the informant had suggested, in the parking lot. At this point, officers clearly had reasonable suspicion to justify further investigation of whether Beasley was in possession of methamphetamine.[9]

---

[9]Under Terry v. Ohio, 392 U.S. 1 (1968), the police may briefly stop and detain persons in order to investigate a reasonable suspicion that those persons are involved in criminal activity, even in the absence of probable cause to believe that a crime has been committed. United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990). Reasonable suspicion is determined from the totality of the circumstances, United States v. Sokolow, 490 U.S. 1, 8 (1989), and requires that the officer point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the investigative stop. Terry, 392 U.S. at 21; see also United States v. Pruitt, 174 F.3d 1215, 1219 (11th Cir. 1999). Although the "reasonable suspicion" required for a Terry stop is less stringent than the requirement for probable cause, United States v. Mikell, 102 F.3d 470, 475 (11th Cir. 1996), "reasonable suspicion" does require that an officer have more than a "hunch" that criminal conduct is afoot based on unparticularized facts. The officer must be able to articulate some minimal, objective justification for the investigatory detention. United States v. Williams, 876 F.2d 1521, 1524 (11th Cir. 1989). As noted above, officers arriving at the Knights Inn had corroborated information from an informant that a person known to have an arrest history for possession of methamphetamine had been found at the location identified by the informant.

15

When Defendant Johnson exited his vehicle and identified himself, Beasley fled. At that point, officers had probable cause to effectuate Beasley's arrest. "[A]n arrest must be objectively reasonable based on the totality of the circumstances" for probable cause to exist. United States v. Street, 472 F.3d 1298, 1305 (11th Cir. 2006) (citation omitted). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense." Id. (citation omitted). Moreover, corroboration of the details of a tip is relevant to the totality-of-the-circumstances analysis. Illinois v. Gates, 462 U.S. 213, 241-42 (1983).

Here, officers, including Defendants, had corroborated the details of a tip when they found Beasley at the Knights Inn. Additionally, when Beasley saw Defendant Johnson, who identified himself as a police officer, wore a badge around his neck, and was known to Beasley by virtue of previous encounters, Beasley fled. The Supreme Court has long recognized:

> [D]eliberately furtive action and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.

Sibron v. New York, 392 U.S. 40, 66-67 (1968); see also Kolender v. Lawson, 461 U.S. 352, 366 n.4 (Brennan, J., concurring) ("[S]ome reactions by individuals to a properly limited Terry encounter . . . such as flight, may often provide necessary information, in addition to that the officers already possess, to constitute probable cause."); Husty v. United States, 282 U.S. 694, 701 (1931) (noting that "prompt attempt . . . to escape when hailed by officers,"

when considered together with other suspicious evidence, ripened into probable cause); United States v. Gonzalez, 122 F.3d 1383, 1385 n.1 (11th Cir. 1997) (fleeing after police identify themselves and direct suspects to exit car was one of several factors in determining that officers had probable cause to effectuate arrest); United States v. Sawyer, 224 F.3d 675, 680-81 (7th Cir. 2000) (finding probable cause to make arrest where suspect standing alone in front of a vacant house in a high crime area fled when officer approached and continued to flee when officer gave chase). Thus, the Court comfortably concludes that there was probable cause to arrest Beasley on October 27, 2004, even before the firearm and drugs were located in the truck in the parking lot that the informant had identified with Beasley.

The Court next turns to the level of force used in effectuating Beasley's arrest. "The Fourth Amendment provides the right to be 'free from the use of excessive force in the course of an investigatory stop or other 'seizure' of the person.'" Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007) (citation omitted). Although the right to make an arrest or investigatory stop carries with it the right to use some degree of force, "all claims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." Graham v. Connor, 490 U.S. 386, 395-96 (1989). The analysis of an allegation of use of excessive force requires the Court to determine whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. The "reasonableness" of the force utilized "turns on the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is

actively resisting arrest or attempting to evade arrest by flight." Davis v. Williams, 451 F.3d 759, 767 (11th Cir. 2006) (internal quotations and citations omitted).

Here, Beasley failed to establish that Defendant Johnson utilized excessive force, in violation of the Fourth Amendment, to effectuate the October 27, 2004 arrest. First, although Beasley claimed that Defendant Johnson struck him in the face, Defendant Johnson and Officer Jarrett both convincingly refuted Beasley's allegation with their consistent and credible testimony that Defendant Johnson did not strike Beasley in the face. Furthermore, Inv. Young testified that no complaint had been filed with the RCSO Internal Affairs Division on Beasley's behalf concerning the alleged use of excessive force. Moreover, Ms. Lee, who provides medical treatment to inmates and maintains medical records for inmates incarcerated at the RCJ, testified that Beasley never complained about injuries resulting from his October 27, 2004 arrest.[10] In addition, although the Court is not a medical expert, Beasley's booking photo does not suggest that he was attacked in the manner that he alleges. Defs.' Ex. 7. For these reasons, and as stated in the Findings of Fact, the Court concludes that Defendant Johnson did not strike Beasley in the face, and this allegation forms no basis for recovery against either named Defendant.

However, as there is no dispute that Defendant Johnson "tackled"/took Beasley to the ground on October 27, 2004, the Court must determine whether this use of force was

---

[10]Indeed, examination of Bealsey's "Intake Health Screening Form" shows that he denied having any medical problems requiring immediate attention, that he had no "obvious" symptoms suggesting the need for medical treatment, and that he had no arrest injuries. Defs.' Ex. 9. Likewise, Beasley's medical records from the relevant time period at the RCJ show that his medical complaints centered on neck and back pain from a motor vehicle accident. Defs.'s Ex. 10.

objectively reasonable. In this regard, Beasley's only evidence in support of his version of events was his own (and as noted above, discredited) testimony that he was attacked without notice, presumably prior to any attempt to flee or resist. Conversely, Defendant Johnson and Officer Jarrett testified that, prior to the incident at the Knights Inn, the RCSO received informant information concerning Beasley's involvement in narcotics activities. Officers corroborated this information when Beasley was found at the location identified by the informant; Beasley was ultimately arrested for possession of methamphetamine with intent to distribute, possession of a firearm by a convicted felon, and obstruction of a law enforcement officer, which are obviously serious crimes. More importantly, Defendant Johnson and Officer Jarrett unequivocally testified that, once Beasley observed law enforcement officers, and Defendant Johnson in particular, approaching him at the Knights Inn on October 27, 2004, he attempted to flee the scene. Thus, it was reasonable, in light of the facts and circumstances confronting the officers, for Defendant Johnson to use the force that he did to prevent Beasley's escape and effectuate the arrest.

In sum, although Beasley was "tackled"/taken to the ground by Defendant Johnson at the Knights Inn on October 27, 2004, the Court finds that, based on the severity of the crimes at issue and Beasley's attempt to evade arrest, Defendant Johnson's use of force was objectively reasonable. Therefore, Beasley's Fourth Amendment claim based on the alleged use of excessive force at the Knights Inn on October 24, 2007 is also without merit.

### C. "Search" of Motel Room

Lastly, the Court turns its attention to Beasley's allegation that Defendants improperly "searched" his motel room at the Knights Inn. As stated above, the Court has already made

19

as one of its findings of fact that there was no search of Beasley's room at the Knights Inn. Only Beasley's discredited testimony suggests that a search was conducted. The credited and corroborated testimony is that once Defendant Johnson stopped Beasley from fleeing and handcuffed him, Beasley requested that he be allowed to retrieve his neck brace from his motel room. As Beasley was in custody at this time, officers escorted him into the motel room. Once inside the motel room, officers observed a "bunch of pills" in plain view, seized them, and logged them into evidence. No charges regarding these pills in plain view were brought against Beasley

To the extent that Beasley may be attempting to argue that a "search" was conducted simply because pills in plain view were seized while he and the officers were in the hotel room to retrieve Beasley's neck brace, this argument also fails. The Supreme Court has set forth specific criteria concerning the warrantless seizure of incriminating evidence found in plain view.[11] First, the officer seizing the evidence must not have violated the Fourth Amendment in arriving at the position from which the evidence can be plainly viewed. Horton v. California, 496 U.S. 128, 136 (1990). In addition, the incriminating nature of the item must be "immediately apparent," and the police must have a lawful right of access to the object. Id. at 136-37. Here, Beasley had been taken into custody after officers had established probable cause for his arrest, and he had requested to retrieve his neck brace from the motel room. As the officers were in the motel at Beasley's request so that he could retrieve his neck brace, no Fourth Amendment violation occurred in arriving inside the motel

---

[11] Although the pills were incriminating, as noted above, no charges were filed against Beasley based on these pills.

room. Once inside, the pills were readily seen in plain view, and the incriminating nature of pills were immediately apparent to the narcotics officers.

In sum, there was no search of the hotel room, and the Fourth Amendment was not violated when the pills in plain view were seized.

## IV.   CONCLUSION

Upon the foregoing, the Clerk is **DIRECTED** to enter a final judgment in favor of both Defendants and to **CLOSE** this case.

SO ORDERED this 17th day of April, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE